IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02896-GPG-KAS

ALEXANDER NOEL GARCIA,

     Plaintiff,

v.

ADAMS COUNTY, COLORADO, a government agency,
RICHARD A. REIGENBORN, Adams County Sheriff,
WILFRED EUROPE, Adams County Deputy,
CHAD KRAUSE, Adams County Deputy,
GENE CLAPS, Adams County Sheriff,
KERRI BOOTH, and
C. M. GRUENBERGER, Adams County Deputy,

     Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

     This matter is before the Court on the **Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)** [#42][1] filed by Defendants Adams County and Kerri Booth ("Booth"); the **Motion to Dismiss** [#50] filed by Defendants Richard Reigenborn ("Reigenborn"), Wilfred Europe ("Europe"), Gene Claps ("Claps"), and C.M. Gruenberger ("Gruenberger") (collectively, the "Sheriff Defendants"); and the **Motion to Dismiss** [#70] filed by Defendant Chad Krause ("Krause"). Plaintiff, who proceeds as a pro se litigant,[2] filed Responses [#52, #61, #74] to the Motions [#42, #50, #70], and

---

[1] "[#42]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must construe liberally the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). In doing so, the Court should not be the pro se litigant's advocate, nor

Defendants filed Replies [#57, #65, #78]. The Motions [#42, #50, #70] have been referred to the undersigned for a recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3). *See* [#49, #51, #72]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons set forth below, the Court **RECOMMENDS** that Defendants Adams County's and Booth's Motion [#42] be **GRANTED in part and DENIED in part**, that the Sheriff Defendants' Motion [#50] be **GRANTED in part and DENIED in part**, and that Defendant Krause's Motion [#70] be **DENIED**.

## I. Background

According to the Amended Complaint [#12],[3] Plaintiff's claims relate to his confinement in Adams County Detention Facility ("ACDF"), into which he was booked on February 24, 2021, as a pretrial detainee. *Am. Compl*. [#12] ¶¶ 2, 11. Between February 24, 2021, and October 2022, Defendant Reigenborn was the acting Adams County Sheriff. *Id.* ¶ 3. Plaintiff asserts that Defendant Reigenborn was the policy maker responsible for creating and enforcing the policies, procedures, practices, and customs at the ACDF and was, therefore, responsible for ensuring that Plaintiff's rights were not

---

should the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] For the purposes of resolving the Motions [#42, #50, #70], the Court accepts as true all well-pleaded, as opposed to conclusory, allegations made in Plaintiff's Amended Complaint [#12]. *See Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To the extent Plaintiff may provide additional allegations or possible new claims in his briefs, the Court notes that a party may not amend his complaint in motion briefing. *See, e.g.*, *Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) (stating that "a party may not amend its complaint by way of arguments in a brief"); *Wilson v. Johnson*, No. 19-cv-2279-CMA-NRN, 2020 WL 5815915, at *5 (D. Colo. Sept. 30, 2020) (stating that it is "well established that Plaintiff may not amend his Complaint by adding factual allegations in response to Defendants' Motion to Dismiss").

violated. *Id.* ¶¶ 1, 3. In October 2022, Defendant Claps replaced Defendant Reigenborn as the acting Adams County Sheriff, and Plaintiff contends that Defendant Claps had the same responsibilities. *Id.* ¶ 5. At all relevant times, Defendant Krause and Defendant Europe were deputies with the Adams County Sheriff Department. *Id.* at 4-5. Defendant Booth is an Assistant Adams County Attorney and is employed by Adams County. *Id.* at 5.

As a result of the allegations outlined below, Plaintiff brings five claims: (1) Claim One: violation of Plaintiff's First Amendment rights to freely exercise his religion and to access the courts, as well as violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), against Defendants Adams County, Reigenborn, Claps, Gruenberger, and Booth[4]; (2) Claim Two: excessive force, in violation of Plaintiff's Fourteenth Amendment rights, against Defendant Europe[5]; (3) Claim Three: excessive force, in violation of Plaintiff's Fourteenth Amendment rights, against Defendant Krause; (4) Claim Four: municipal liability under the Fourteenth Amendment against Defendant Adams County; and (5) a 42 U.S.C. § 1983 claim of supervisory liability for failure to train and supervise against Defendants Reigenborn and Claps. *Id.* at 7, 14, 17, 19, 21.

---

[4] The Sheriff Defendants note that Plaintiff does not formally assert this or any claim against Defendant Gruenberger, but because this deputy is named as a defendant and is mentioned in allegations underlying Claim One, they broadly construe the claim as also being asserted against Defendant Gruenberger. *Motion* [#50] at 2 n.2. Similarly, neither this claim nor any other is explicitly asserted against Defendant Booth, but she construes the Amended Complaint [#12] as asserting Claim One against her given the allegations underlying this claim. *Motion* [#42] at 11.

[5] Plaintiff crossed out a second defendant here, Defendant Krause, and wrote "AG," which appears not to be a separate defendant but, rather, Plaintiff initialing the document to indicate that he was the one to make the change. *Am. Compl.* [#12] at 14; *see also, e.g., id.* ¶ 54 (making an edit and initialing it "AG").

The following allegations underlie Plaintiff's first claim, which asserts both that his free exercise of religion and his right to access the courts were impeded. *Id.* at 7-14. Plaintiff is Messianic Jewish, and he alleges that Defendants Reigenborn and Claps substantially burdened his religious beliefs because he was not allowed to attend any "perspective services" and had to choose between consuming non-kosher food and following his religion. *Id.* ¶¶ 13, 19. More specifically, between February 24, 2021, and October 2022, Defendant Reigenborn did not implement any religious services for Messianic Judaism, failed to keep kosher meals separated from non-kosher meals, served kosher meals on the same reusable food trays that are used for nonkosher meals, and failed to wrap kosher meals with plastic wrap. *Id.* ¶ 14. Defendant Claps did the same from October 2022 onward. *Id.* ¶ 15. Plaintiff contends that these decisions were motivated by cost savings and deprived him of his ability to freely exercise his beliefs. *Id.* ¶ 18.

Plaintiff asserts that Defendants Booth, Gruenberger, and Claps also intentionally, willfully, and maliciously deprived him of his right to correspond outside the prison and that this impacted his access to the courts. *Id.* ¶ 20. On January 17, 2023, the Court ordered Plaintiff to file an amended complaint, and that order was mailed to Plaintiff with a notation, "Special Mail Open Only in the Presence of the Inmate." *Id.* ¶ 13. Despite this notation, someone in the ACDF mailroom opened the mail and forwarded the mail to Defendant Booth. *Ex. CC to Am. Compl.* [#12-1] at 3-4.[6] Plaintiff argues that Defendant Booth intercepted and delayed his correspondence and

---

[6] The Court may consider documents attached to a complaint when evaluating a Rule 12(b)(6) motion. *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

interfered with his access to the courts and his protected First Amendment rights. *Am. Compl.* [#12] ¶¶ 21-23. Defendant Booth purportedly did not provide Plaintiff with the January 17, 2023 Order until February 6, 2023. *Id.* ¶¶ 25-26. A January 23, 2023 Order was also intercepted and/or reviewed by Defendants Claps and Gruenberger. *Id.* ¶ 30.[7]

Plaintiff's second claim is that his Fourteenth Amendment rights were violated by Defendant Europe's use of excessive force. *Id.* ¶ 32. On December 6, 2021, around 11:30 a.m., Plaintiff and a group of inmates were walking down the hallway when Defendant Europe "singled Plaintiff out of [the] group" and detained him. *Id.* ¶¶ 33-36. Defendant Europe ordered Plaintiff to spread his legs and interlock his hands on top of his head; this position is known as the "pat down" position. *Id.* ¶¶ 37-38. While Plaintiff was in the pat down position, Defendant Europe struck him twice in the chest without provocation.[8] *Id.* ¶ 38. Defendant Europe then threatened bodily harm to Plaintiff's family while Plaintiff was retained in custody. *Id.* ¶ 39. On December 12, 2021, Plaintiff was transported to the hospital where he was treated for unspecified chest pains. *Id.* ¶ 40. Plaintiff asserts that the force Defendant Europe used was unreasonable. *Id.* ¶¶ 44-47.

---

[7] The Court notes that it has been unable to definitively identify which lawsuit this January 23, 2023 Order came from. No order was issued by the Court in this case between January 17, 2023, and February 23, 2023. Similarly, in another of Plaintiff's lawsuits, No. 22-cv-02769-GPG-KAS, no orders were issued between January 18, 2023, and February 23, 2023. Plaintiff *may* be referring to a February 23, 2023 Minute Order [#10] issued in No. 22-cv-02769-GPG-KAS. Regardless, the precise identity of this order does not materially impact the Court's analysis below.

[8] Plaintiff states that he was hit the first time at 10:15:41 and the second time at 10:15:46. *Am. Compl.* [#12] ¶ 38. However, these times do not make sense when viewed with his prior allegation that he was walking down the hallway around 11:30 a.m. *Id.* ¶ 34. Regardless, this inconsistency does not impact adjudication of the Sheriff Defendants' Motion [#50].

Plaintiff's third claim also involves the use of excessive force. On April 11, 2022, all the inmates were served their afternoon meal, and Plaintiff informed Defendant Krause that he did not receive his religious diet meal. *Id.* ¶ 49. Defendant Krause told Plaintiff to remind him later and, several hours later, Plaintiff had still not received his meal and reminded Defendant Krause that he had not received his religious diet meal. *Id.* ¶ 50. Defendant Krause then asked Plaintiff to sit outside the room they were in and, while Plaintiff was exiting the room, Defendant Krause lunged at him without provocation, grabbed his arm, and performed several strikes to Plaintiff's right knee. *Id.* ¶¶ 52-53. Defendant Krause then tried to force Plaintiff to the ground, unholstered his Taser, and threatened to tase Plaintiff while pressing the Taser gun against his body. *Id.* ¶¶ 54-55.

During the altercation, Plaintiff's right knee was partially dislocated and his right wrist was damaged, causing bleeding from two locations. *Id.* ¶ 56. This purportedly resulted in permanent visible disfigurement. *Id.* Plaintiff was then handcuffed and forced to walk with his arms elevated which further injured his wrist and knee. *Id.* ¶ 57. Plaintiff contends that there was a functional video camera in the room and that the footage was destroyed by Defendants. *Id.* ¶¶ 58-59. Plaintiff asserts that Defendant Krause's actions were unjustified. *Id.* ¶¶ 64-67.

Plaintiff's fourth claim is a claim for municipal liability against Defendant Adams County. He contends that Adams County was deliberately indifferent to the unconstitutional policies, customs, or practices regarding the use of force in ACDF. *Id.* ¶¶ 72-73. Adams County did not require an annual "Stress [I]noculation" training for employees to reduce stress triggers, which allegedly caused them to take out their

stress on detainees. *Id.* ¶ 74. Plaintiff also contends that Adams County failed to properly train and supervise the employees of ACDF about the use of force. *Id.* ¶ 75. Adams County also purportedly failed to supervise or train its employees on detainees' freedom to exercise their religious rights and their rights to access the courts. *Id.* ¶¶ 76-78.

Plaintiff's fifth and final claim is for supervisory liability for failure to train and supervise. *Id.* at 21-24. Defendant Reigenborn supervised all the sergeants and deputies at ACDF, including those who allegedly beat Plaintiff on December 6, 2021, and April 11, 2022. *Id.* ¶ 80. Plaintiff alleges that Defendant Reigenborn did not discipline anyone in connection with the assaults on Plaintiff. *Id.* ¶ 81. Plaintiff further contends that Defendant Reigenborn failed to properly require stress inoculation training and failed to properly hire, train, supervise, or discipline any of his subordinates. *Id.* ¶ 83. He alleges the same of Defendant Claps. *Id.* ¶¶ 94-99. Plaintiff also complains that the Adams County Sheriff's Office investigated the two assaults but that no criminal charges resulted, and that the video footage of the attack from April 11, 2022, was purportedly destroyed. *Id.* ¶ 82.

Finally, the Court notes that Plaintiff asserts he was previously assaulted by personnel at the Adams County Sheriff Department ("ACSD") on May 27, 2015, and October 29, 2015. *Id.* ¶ 85. Plaintiff and the ACSD reached a settlement in the lawsuit that resulted from those alleged assaults.[9] *Id.*

---

[9] Plaintiff lists this case number as 16-cv-1997, *see* [#12] ¶ 85, but the correct case appears to be *Garcia v. Adams County, Colorado*, No. 16-cv-01977-PAB-NYW.

## II. Legal Standard

**A.      Fed. R. Civ. P. 12(b)(1)**

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the
court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67
F.4th 1093, 1108 (10th Cir. 2023). In other words, "[a] Rule 12(b)(1) motion to dismiss
only requires the court to determine whether it has authority to adjudicate the matter."
*Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). Because federal
courts are tribunals of limited jurisdiction, the Court must establish a statutory basis to
exercise jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th
Cir. 2002). The Court may only exercise jurisdiction "in the presence rather than the
absence of statutory authority." *Castaneda v. I.N.S.*, 23 F.3d 1576, 1580 (10th Cir.
1994) (quoting *Wyeth Lab'ys v. U.S. Dist. Ct.*, 851 F.2d 321, 324 (10th Cir. 1988)). "The
party invoking federal jurisdiction has the burden to establish that it is proper, and there
is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762
F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

"Rule 12(b)(1) challenges may take two different forms." *Graff v. Aberdeen
Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023). "The moving party may (1) facially
attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2)
go beyond allegations contained in the complaint by presenting evidence to challenge
the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin.
Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004). "When resolving a facial
attack on the allegations of subject matter jurisdiction, a court must accept the

allegations in the complaint as true." *Graff*, 65 F.4th at 507 (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). "Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment[.]" *SK Fin. SA*, 126 F.3d at 1275. "In such instances, a court has discretion to consider affidavits and other documents to resolve the jurisdictional question." *Graff*, 65 F.4th at 507 (citing *Holt*, 46 F.3d at 1003).

**B.    Fed. R. Civ. P. 12(b)(6)**

Fed. R. Civ. P. 12(b)(6) permits dismissal of a claim where the plaintiff has "fail[ed] to state a claim upon which relief can be granted." The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "A complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When the complaint includes 'well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Carraway v. State Farm Fire & Cas. Co.*, No. 22-1370, 2023 WL 5374393, at *4 (10th Cir. Aug. 22, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"A pleading that offers labels and conclusions or a formulaic recitation of the

elements of a cause of action will not do[,] . . . [n]or does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "[D]ismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial[.]" *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

### III. Analysis

**A.    Defendants Adams County and Booth: Motion [#42]**

**1.    Claims One and Four: Defendant Adams County**

Plaintiff brings two claims against Adams County: violation of the First Amendment relating to his rights to access the courts, to access his legal mail, and to practice his religion (Claim One) and municipal liability (Claim Four). *Am. Compl.* [#12] at 7, 19.

Under Claim Four, Plaintiff seeks to impose municipal liability on Defendant Adams County based on Defendants' alleged conduct underlying Claims One through Three. *Am. Compl.* [#12] ¶¶ 68-78. Thus, Plaintiff seeks to impose municipal liability based on his constitutional rights to access the courts and his mail and to freely exercise his religion, as asserted under Claim One, *see Am. Compl.* [#12] ¶¶ 73, 76-77, and on his constitutional right to be free of excessive force, as asserted under Claims Two and Three, *id.* ¶¶ 70, 74-76.[10]

---

[10] Plaintiff does not explicitly reference his RLUIPA claim in connection with his municipal liability claim. *See Am. Compl.* [#12] ¶¶ 68-78. However, even liberally construing the Amended

Plaintiff's Claim One against Adams County, although not formally titled as a municipal liability claim, is duplicative of Plaintiff's Claim Four. *See, e.g.*, *id.* ¶¶ 73, 76, 77 (discussing Plaintiff's access to the courts and free exercise of religion in connection with Claim Four). Thus, at the outset, the Court **recommends** that Plaintiff's Claim One, to the extent asserted against Defendant Adams County, be **dismissed** as duplicative of Claim Four.

A municipality "is a 'person' subject to § 1983 liability." *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). "Municipal liability requires an underlying constitutional violation." *Buchanan v. Turn Key Health Clinics, LLC*, No. 22-7029, 2023 WL 6997404, at *7 (10th Cir. Oct. 24, 2023). "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020). However, "[b]ecause municipalities act through officers, ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation." *Id.*

In addition to the requirement that there be a constitutional violation, a plaintiff must satisfy three other elements to succeed on a municipal liability claim: "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023).

Regarding the first element, an official policy or custom may include:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled

---

Complaint [#12] to find that he had, and even assuming that municipal liability could attach to Defendant Adams County given that this is a statutory claim, the Court would find that it lacks subject matter jurisdiction over the claim for the reasons stated in Section III.B.1. below.

as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).

Regarding the second element, i.e., causation, "the challenged policy or practice must be closely related to the violation of the plaintiff's federally protected right." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotation marks omitted). The policy or custom must be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 400 (1997).

Regarding the third element, "[a] local government policymaker is deliberately indifferent when he 'deliberately' or 'consciously' fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997). "In the municipal liability context, deliberate indifference is an objective standard that may be satisfied if the risk is so obvious that the official should have known of it." *Buchanan*, 2023 WL 6997404, at *8 (internal quotation marks omitted) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 n.5 (10th Cir. 1998)).

Adams County first asserts that the Adams County Sheriff is an independently elected constitutional officer who is separate and distinct from Adams County, which is a governmental entity controlled by an elected Board of County Commissioners (the

"Board"). Colo. Const., Art. XIV, §§ 6, 8, 8.5; *see Bristol v. Bd. of Cnty. Comm'rs of
Clear Creek*, 312 F.3d 1213, 1219 (10th Cir. 2002) (en banc); *see also Tunget v. Bd. of
Cnty. Comm'rs*, 992 P.2d 650, 651-652 (Colo. App. 1999). Thus, Adams County argues
that Plaintiff's municipal liability claim against it fails as a matter of law. *Motion* [#42] at
6-11.

The Sheriff has the exclusive statutory authority to hire, train, and fire deputies as
well as exclusive statutory powers as the keeper of the jail. Colo. Rev. Stat. § 30-10-506
(appointment powers), 511 (custodial authority); Colo. Rev. Stat. §§ 17-26-102
(authority as "keeper of the county jail"), 103 (duties as keeper); *Myers v. Koopman*, No.
09-cv-02802-REB-MEH, 2011 WL 650328, at *11 (D. Colo. Feb. 11, 2011) (reasoning
that, despite the Board of County Commissioners' authority to appropriate funds for the
sheriff's office's operation, "under Colorado law only a sheriff has the right to supervise
and control the sheriff's deputies."); *see also Sisneros v. Cnty. of Pueblo*, No. 09-cv-
01646-PAB-MJW, 2010 WL 1782017, at *3 (D. Colo. May 3, 2010) (holding that
allegations against the Board regarding the sheriff's office's jail management and
"resulting harm to plaintiff are, without more, insufficient to state a claim against the
County of Pueblo."). "[T]he Board does not exercise managerial control over either the
sheriff or the detention center and its staff," and the Board does not have a duty to
ensure an inmate's safety at a detention center. *Terry v. Sullivan,* 58 P.3d 1098, 1102
(Colo. App. 2002) (discussed in *Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *6
(10th Cir. Jan. 10, 2007)).

Nevertheless, "a plaintiff may state a claim against the Board by describing an
unconstitutional policy or custom in place at a detention center that was implemented or

established by the Board of County Commissioners." *McGill v. Corr. Healthcare Cos., Inc.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 2922635, at *6 (D. Colo. June 27, 2014) (collecting cases). "Colorado law forecloses any notion that a sheriff's office should be held to account alone, independent from 'the county'," because a monetary judgment against any county officer in his or her official capacity "must be paid either out of 'the ordinary county fund' or through a special property tax," which renders the distinction between suing the sheriff's office or the county "purely theoretical." *Chavez v. Bd. Of Cnty. Comm'rs of Lake Cnty., Colo.*, 426 F. Supp. 3d 802, 813 (quoting Colo. Rev. Stat. § 30-25-104(1)). Additionally, "counties can be held liable for the misdeeds of Sheriffs and their employees when the Sheriff is held to set 'official policy' for the county." *Bristol*, 312 F.3d at 1221.

The Court finds that the question of whether a policy is properly attributable to the county or the sheriff is better answered at the close of discovery. *Est. of Ward by & through Ward Stamp v. Lucero*, No. 1:23-cv-00473-CNS-MDB, 2024 WL 128166, at *3 (D. Colo. Jan. 11, 2024) (reasoning that whether the challenged municipal policies are attributable to the Sheriff or the Board "is likely better suited to the summary judgment phase"). Granting dismissal at this stage would not conform with the standards of 12(b)(6) to the extent that Plaintiff's allegations rest on a cognizable legal argument that Adams County is liable for the Sheriff's policies.

Turning to the specifics of Plaintiff's municipal liability claim, the Court begins with the underlying excessive force allegations. Plaintiff has alleged that he and the ACSD reached a settlement in connection with excessive force issues occurring in 2016. *Am. Compl.* [#12] ¶ 85. His current action alleges two more instances of

excessive force by deputies in the ACSD. *Id.* ¶¶ 32-47; 50-55. "When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate the constitutional rights of citizens, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. A policy of inaction despite notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Montoya v. Newman*, 115 F. Supp. 3d 1263, 1283 (D. Colo. 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Here, Plaintiff has alleged four instances of excessive force by Adams County sheriff deputies against him personally, two that underlie the present lawsuit and two that underlie a prior lawsuit, i.e., No. 16-cv-01977-PAB-NYW. *Am. Compl.* [#12] at 22. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference" in the failure to train context. *Connick*, 563 U.S. at 62 (citation omitted). Plaintiff has plausibly alleged a policy of inaction and that the prior settlement with ACSD placed Adams County on notice that a particular omission in training caused ACSD employees to violate detainees' constitutional rights. Accordingly, the Court **recommends** that the Motion [#42] be **denied in part** as to Claim Four regarding municipal liability based on the purported use of excessive force.

Turning to the allegations concerning access to the courts (including mail issues) and free exercise of religion, the Court reiterates that "[m]unicipal liability requires an underlying constitutional violation." *Buchanan*, 2023 WL 6997404, at *7. For the reasons stated below in Sections III.A.2., III.B.5., and III.B.6., the Court finds that Plaintiff has failed to adequately state claims regarding access to the courts (including his right to

mail) and First Amendment religious rights. Thus, Plaintiff fails to meet the first requirement of his municipal liability claim to the extent premised on these underlying allegations. Accordingly, the Court **recommends** that the Motion [#42] be **granted in part** and that Claim Four, to the extent Plaintiff asserts a claim for municipal liability be **dismissed without prejudice** regarding religious rights, *see infra* § III.B.6. and **dismissed with prejudice** regarding access to the courts and mail, *see infra* §§ III.A.2. & III.B.5.

### 2.    Claim One: Defendant Booth

Plaintiff alleges that Defendant Booth interfered with the Court's January 17, 2023 Order [#8] in this case when it was mailed to Plaintiff. *Am. Compl.* [#12] ¶ 20. The Order [#8] required Plaintiff to file an amended complaint and was mailed to him with a notation, "Special Mail Open Only in the Presence of the Inmate." *Am. Compl.* [#12] ¶ 23. Despite this notation, someone in the ACDF mailroom apparently opened the mail and forwarded it to Defendant Booth. *Id.* ¶¶ 20-30; *Exhibit CC* [#12-1] at 3-4. Plaintiff therefore argues that Defendant Booth intercepted and delayed his correspondence and interfered with his access to the courts and his protected First Amendment rights. *Am. Compl.* [#12] ¶¶ 21-23. Defendant Booth purportedly did not provide Plaintiff with the January 17, 2023 Order until February 6, 2023. *Id.* ¶¶ 25-26.[11]

---

[11] Plaintiff also alleges that a "Deputy Andazola," who is not named as a party in his Amended Complaint [#12], "opened a legal envelope in front of [Plaintiff]" which was "addressed to [Plaintiff] from defendant Kerri Booth," inside of which "was an opened and inspected court order from January 17, 2023." *Am. Compl.* [#12] ¶ 27. The Court construes this allegation as part of Plaintiff's allegation that Defendant Booth delayed or interfered with his mail and his access to the courts. *Id.* ¶¶ 23-29. The Court notes that any claims arising from interference with mail or access to the courts against Deputy Andazola would fail for the same reasons that those claims fail against Defendant Booth and the Sheriff Defendants, i.e., Plaintiff has failed to allege any actual injury arising from the alleged interference. *See infra* §§ III.A.2.a.-b. and III.B.5.

The Order [#8] was a public court filing and, therefore, did not contain protected attorney-client privileged matter. The Order [#8] gave Plaintiff thirty days to file an amended complaint. Plaintiff later sought an extension of time to comply with the Order [#8], which the Court granted. *Motion for Extension of Time* [#9]; *Minute Order* [#11]. The Court construes Plaintiff's Claim One against Defendant Booth as two related claims, both for violations of Plaintiff's First Amendment rights, by interfering with his mail in this litigation and by interfering with his access to the courts.

### a.     Access to the Courts

Defendant Booth contends in part that Plaintiff suffered no cognizable injury from the isolated incident in which his mail was re-routed because it did not prejudice his position in this matter. *Motion* [#42] at 11.

Like other individuals, prisoners have the constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts for the purpose of presenting their complaints. *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (collecting cases). This right means that "the state must provide [the prisoner] with a 'reasonably adequate opportunity' to present his legal claims." *United States v. Santiago*, 199 F. Supp. 3d 1287, 1289-90 (D. Colo. 2016) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Petrick v. Maynard*, 11 F.3d 991, 994 (10th Cir. 1993)). Practically, this means that prisoners must be given "paper, writing implements, stamps, and access to notary services, as well access to an adequate law library or legal advisor." *Id.* (citing same). The right of access to the courts "has not been extended by [the United States Supreme Court] to apply further than protecting the

ability of an inmate to prepare a petition or complaint." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).[12]

Claimed violations of the right to access the courts commonly occur alongside allegations of interference with ingoing and outgoing mail. *See, e.g., Gee v. Pacheco*, 627 F.3d 1178, 1190-91 (10th Cir. 2010); *Treff v. Galetka*, 74 F.3d 191, 194, No. 95-4012, 1996 WL 8165 (10th Cir. Jan. 23, 1996). To have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996); *see also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir.1998) ("To present a viable claim for denial of access to courts, however, an inmate must allege and prove prejudice arising from the defendants' actions."). An inmate may demonstrate actual injury by showing that he was unable to meet a filing deadline or present a claim, which resulted in an adverse ruling or other impediment. *Lewis*, 518 U.S. at 350, 348-355. Moreover, "an isolated incident, without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation." *Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (quotation marks and citation omitted).

---

[12] Although *Wolff v. McDonnell* involved an access to the courts claim asserted under the Fourteenth Amendment's due process clause, its holding is applicable to Plaintiff's First Amendment claim here. The constitutional  right of access to the courts is "rooted in the Due Process Clause of the Fourteenth Amendment, the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities provisions of Article IV and the Fourteenth Amendment, and the Petition Clause of the First Amendment." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1235 (D.N.M. 2016); *see also Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (observing that the Supreme Court has variously described the right of access  to the courts as part of the Article IV privileges and immunities clause, the First Amendment petition clause, the Fifth and Fourteenth Amendments' respective due process clauses, and the Fourteenth Amendment's equal protection clause). However, "[t]he elements of a denial of access claim, under any source, appear to be uniform." *Raguindin v. Yates*, No. 15-cv-00635-CMA-KLM, 2016 WL 11384333, at *7 (D. Colo. Feb. 29, 2016) (citing *Christopher*, 536 U.S. at 413-16). Thus, while Plaintiff here explicitly asserts his right of access to the courts claim under the First Amendment, the same law applies regardless of how the claim is asserted.

Here, Plaintiff sought and was granted an extension of time in which to act on the Court's January 17, 2023 Order [#8]. *Motion for Extension of Time* [#9]; *Minute Order* [#11]. He has not alleged harm to his case, an adverse ruling, or other obstacle to the pursuit of his claims. The Court's review of the electronic docket confirms that Plaintiff suffered no harm to this case based on that delay. Thus, this portion of the claim should be dismissed because Plaintiff alleges no prejudice and his right of access to the courts has not been impeded such that it constitutes actual injury.

Accordingly, the Court **recommends** that the Motion [#42] be **granted in part**, and that Claim One, to the extent asserted against Defendant Booth based on Plaintiff's right to access the courts, be **dismissed with prejudice**. *Wilson v. Reid*, 781 F. App'x 789, 793 (10th Cir. 2019) (stating that dismissal with prejudice of pro se litigant's complaint is appropriate where amendment would be futile).

### b.    Interference with Mail

"[A] First Amendment claim of interference with mail ordinarily is not plausible absent factual allegations showing at least that the alleged interference violated prison rules or that the applicable rule was invalid, either generally or in the specific context of the claim." *Gee*, 627 F.3d at 1185. Additionally, "bare allegations . . . of brief delays in mailing or receiving . . . correspondence . . . do not rise to the level of constitutional violations." *Id.* at 1190. The prisoner must demonstrate actual injury from the interference with his mail, along with improper motive. *Id.* at 1191; *see Treff*, 74 F.3d at 194 (finding no constitutional violation where the prisoner plaintiff claimed that "mail to and from the federal district court on three occasions took four, seven, and nine days" because the prisoner "claim[ed] no prejudice as a result of these delays"). Even

"isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts,' do not support a civil rights claim." *Berger v. White*, 12 F. App'x 768, 771 (10th Cir. 2001) (quoting *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)).

In *Gee*, the prisoner plausibly alleged a violation of his First Amendment rights where he alleged that he had placed adequate postage on letters but that the defendant refused to send them. *Id.* at 1188. The prisoner also plausibly alleged violation of his rights where a letter from his sister was confiscated and never given to him. *Id.* However,

Here, the mail that was intercepted was not protected or privileged material and it was not indefinitely withheld from Plaintiff. Plaintiff has alleged nothing more than "isolated incidents" of opening his mail—in fact, he admits that in the past two years he has received "hundreds of legal mail" but he identifies only two pieces of "legal mail" which he claims were "intentionally impeded." *Am. Compl.* [#12] ¶ 31. The Order [#8] at issue here was not a particularly sensitive piece of mail—it was a public court order to which Defendants also had access—and there is no indication that the other piece of legal mail referenced was sensitive either. *See id.* Plaintiff's own allegations show this to be an isolated incident, which does not support a civil rights claim. *Berger*, 12 F. App'x at 771.

In sum, Plaintiff fails to articulate any harm he suffered due to the delay of this one piece of mail. Thus, this claim should be dismissed. Accordingly, the Court **recommends** that the Motion [#42] be **granted in part**, and that Claim One, to the extent asserted against Defendant Booth based on alleged interference with Plaintiff's

mail, be **dismissed with prejudice**. *See Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990); *Wilson*, 781 F. App'x at 793.

**B.    The Sheriff Defendants and Defendant Krause: Motions [#50, #70]**

**1.    Claim One: RLUIPA**

The bases for Plaintiff's RLUIPA claim under Claim One are the same as the basis for his First Amendment free exercise claim under Claim One, as discussed below in Section III.B.5. *See Am. Compl.* [#12] ¶¶ 1-19. However, because the Court finds that it lacks subject matter jurisdiction over this claim, the Court addresses this claim first.

RLUIPA provides relief only in the form of declaratory and/or injunctive relief against Defendants in their official capacities. *See Warner v. Patterson*, 534 F. App'x 785, 788 (10th Cir. 2013). However, Plaintiff was released from his detention at the ACDF shortly before October 12, 2023. *Motion to Inform the Court and Parties of a Change of Address* [#71] at 1. Because Plaintiff is no longer in custody, his RLUIPA claim is moot. *See, e.g.*, *Warner*, 534 F. App'x at 788 (finding as moot the plaintiff's claims under RLUIPA given that the plaintiff was no longer in the custody of the Utah Department of Corrections).

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part** and that Plaintiff's RLUIPA claim be **dismissed without prejudice**. *See, e.g.*, *Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (stating that dismissal due to mootness must be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because

a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

### 2.    Three Strikes Rule

The Sheriff Defendants and Defendant Krause argue that the "three strikes" rule should bar Plaintiff from proceeding without paying the full filing fee. *Motion* [#50] at 3-4; *Motion* [#70] at 3.

The Prison Litigation Reform Act ("PLRA") contains a provision known as the three strikes rule, which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). In short, this provision allows courts "to revoke, with limited exception, *in forma pauperis* privileges for any prisoner who has filed three or more lawsuits that fail to state a claim, or are malicious or frivolous." *Skinner v. Switzer*, 562 U.S. 521, 535-36 (2011). A dismissal for failure to prosecute under Fed. R. Civ. P. 41(b) does not count as a strike. *Carbajal v. McCann*, 808 F. App'x 620, 629 (10th Cir. 2020). In addition, dismissal based on lack of subject matter jurisdiction does not count as a strike. *Id.* at 629-30 (further stating that "[a] dismissal generally only counts as a strike if all claims in the action are dismissed on a § 1915(g) ground"). Finally, "[a] voluntary dismissal does not count as a PLRA strike." *Id.* at 630.

The Court notes that filing an appeal counts as a separate action, and therefore two strikes *may* be assessed in the same lawsuit, once by the district court and once by

the court of appeals. *See Burnett v. Fallin*, 754 F. App'x 696, 708 (10th Cir. 2018). However, an appellate court affirming a district court's dismissal for failure to state a claim, even where the district court assessed a strike, does not automatically mean that a second strike is assessed. *See id.* For example, in *Burnett v. Fallin*, the Tenth Circuit Court of Appeals affirmed the district court's dismissal of the plaintiff's complaint for failure to state a claim and affirmed the district court's assignment of a strike but declined to assess a strike in connection with the appeal because it deemed the plaintiff's arguments for reversing the district court's judgment to be non-frivolous. *Id.*

The Sheriff Defendants and Defendant Krause collectively direct the Court's attention to five cases which they contend count as strikes against Plaintiff. *Motion* [#50] at 4; *Motion* [#70] at 3. The first case, *Garcia v. Adams County*, No. 22-1063, 2022 WL 17347876 (10th Cir. Dec. 1, 2022), is inapplicable because, even assuming a strike had been assessed, it was not assessed until after Plaintiff filed this current lawsuit on November 7, 2022.

The second case, *Garcia v. Adams County*, No. 21-cv-01120-CMA-KLM, 2022 WL 626681 (D. Colo. Feb. 17, 2022), was the underlying district court case to the appellate case *Garcia v. Adams County*, No. 22-1063, 2022 WL 17347876 (10th Cir. Dec. 1, 2022). Even assuming that the district court case involved a strike, strikes imposed at the district court level are not deemed final until appellate proceedings are concluded. *See Burnett*, 754 F. App'x at 708 n.11 (noting that the district court's strike did not ripen until judgment became final following the appeal). Thus, any strike imposed by the district court did not become final until Plaintiff's time to appeal the

appellate case expired and judgment became final. This did not occur until after the current case was filed on November 7, 2022.

Similarly, in the third case, *Garcia v. Hefner*, 19-cv-00555-CMA-KLM, 2021 WL 6010940 (D. Colo. July 14, 2021), *report and recommendation adopted*, No. 19-cv-00555-CMA-KLM, 2021 WL 5356778 (D. Colo. Nov. 17, 2021), *aff'd in part, appeal dismissed in part*, No. 21-1420, 2022 WL 10225135 (10th Cir. Oct. 18, 2022), even assuming that a strike was assessed, the strike did not ripen until after Plaintiff's time to file a writ of certiorari with the United States Supreme Court passed, which was 90 days after entry of judgment by the Tenth Circuit Court of Appeals. *See* Sup. Ct. R. 13.1. This occurred after Plaintiff filed the present lawsuit on November 7, 2022.

Thus, because these three cases did not count as strikes at the time Plaintiff filed this lawsuit, the three strikes rule does not apply, even assuming that the other two cases cited by Defendants constitute strikes (a point on which the Court makes no finding).

Accordingly, the Court **recommends** that the Motions [#50, #70] be **denied in part** to the extent Defendants argue the three strikes rule.

### 3.    Exhaustion of Administrative Remedies

The Sheriff Defendants and Defendant Krause argue that Plaintiff failed to exhaust his statutorily required administrative remedies under the Prison Litigation Reform Act ("PLRA"). *Motion* [#50] at 2, 5-6, 9-10; *Motion* [#70] at 3-10.

The PLRA requires inmates to exhaust administrative remedies before filing suit under 42 U.S.C. § 1983 "or any other Federal law."[13] 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Exhaustion means that an inmate must "properly follow[ ] all of the steps laid out in the prison system's grievance procedure," including meeting deadlines and complying with other critical procedural rules.[14] *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)); *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). An inmate's failure to exhaust his administrative remedies does not deprive the Court of subject matter jurisdiction. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *see also Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1208-09 (10th Cir. 2003) (noting that PLRA's exhaustion requirement "does not defeat federal-court jurisdiction[.]") (internal quotation marks and citation omitted)), *abrogated on other grounds by Jones*, 549 U.S. at 215-16. However, the Court must dismiss

---

[13] "The PLRA applies to pretrial detainees as well as prisoners." *Routt v. Hansford*, No. 4:18-cv-00439-CRK-JFJ, 2022 WL 17553017, at *2 n.3 (N.D. Okla. Dec. 9, 2022) (citing 42 U.S.C. § 1997e(h)).

[14] The primary exception to the exhaustion requirement is where the administrative remedies are not "available" to the prisoner, such as where "prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy[.]" *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010). An exception may also be made where the grievance procedure is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands[.]" *Ross v. Blake*, 578 U.S. 632, 644 (2016) (citations omitted).

(usually without prejudice) any claims which have not been exhausted. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

An inmate is not required to plead or demonstrate exhaustion in his complaint. *Jones*, 549 U.S. at 216.[15] Rather, exhaustion is an affirmative defense under the PLRA, *Jones*, 549 U.S. at 216, and therefore "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). This burden requires the defendant to prove both that the remedies were available and that the plaintiff failed to exhaust them. *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008). Because inmates do not have an affirmative duty to plead exhaustion, a motion to dismiss for failure to exhaust is only granted in "rare cases" where "it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Defendants assert their argument under Fed. R. Civ. P. 12(b)(6). *See Gallagher*, 587 F.3d at 1068. Neither the Sheriff Defendants nor Defendant Krause provided any grievances for the Court's consideration, although Defendant Krause does provide a thorough list of Plaintiff's grievances in his Motion [#70], in a summary table form. *See Motion* [#50]; *Reply* [#65]; *Motion* [#70] at 5-10; *Reply* [#78]. Regardless, under the Rule 12(b)(6) motion to dismiss standard, the Court could not consider documents outside the pleadings (with limited exceptions not applicable here), without converting the

---

[15] Thus, the United States Supreme Court's 2007 *Jones* opinion essentially overruled *Peoples v. Gilman*, 109 F. App'x 381, 383 (10th Cir. 2004), a case cited by both the Sheriff Defendants and Defendant Krause for the proposition that a motion to dismiss may be granted where the prisoner has failed to sufficiently plead exhaustion of administrative remedies. *See Motion* [#50] at 6; *Motion* [#70] at 10. The *Jones* opinion is now seventeen years old, and counsel should therefore be well aware of its holdings. Counsel are advised to be far more careful in the future about presenting such frivolous argument.

motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d).[16] Here, it is not "clear from the face of the complaint" that Plaintiff failed to exhaust his administrative remedies.[17] *Aquilar-Avellaveda*, 478 F.3d at 1225. Thus, Defendants' Motions must be denied to the extent they seek dismissal on this basis.

Accordingly, the Court **recommends** that the Motions [#50, #70] be **denied in part** to the extent Defendants seek dismissal based on failure to exhaust administrative remedies.[18]

### 4.    Claim Two: Excessive Force

Plaintiff contends that Defendant Europe used excessive force on him. *Am. Compl.* [#12] at 15-16. Plaintiff alleges that Defendant Europe struck him twice in the chest without provocation while Plaintiff was in a vulnerable "pat down" position. *Id.* ¶ 38. Plaintiff states that he "felt a deep pain in his chest" and that about a week later he was taken to the hospital to be "treated for unspecified chest pains." *Id.* ¶¶ 39-40.

---

[16] The Court has not converted the present Motions [#50, #70] into ones for summary judgment in part because no party made this request and in part because, based on the limited information before the Court, it appears there may be a disputed issue of material fact precluding summary judgment at this juncture, although the Court reaches no conclusion on that issue at this time.

[17] The Court notes that Plaintiff did not complete Section F of his complaint, regarding Administrative Remedies. *See Am. Compl.*[#12] at 25.

[18] Other than the three strikes rule and exhaustion, Defendant Krause has not set forth any other argument for dismissal of Plaintiff's sole claim against him: Claim Three, violation of Plaintiff's Fourteenth Amendment rights due to excessive force. *See Motion* [#70]. The Court notes that this claim does not appear subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which states that, where the litigant proceeds in forma pauperis, the Court should dismiss "at any time" when it determines that the Plaintiff has failed to state a claim on which relief may be granted. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 423 (1980) (holding that the Constitution is violated by "excessive or unprovoked violence and brutality inflicted upon inmates by prison guards upon inmates").

Defendant Europe's only claim-specific argument concerning this claim's dismissal is based on exhaustion. *Motion* [#50] at 9-10. The Court has already rejected this argument. *See supra* § III.B.3. Defendant Europe and the other Sheriff Defendants also assert qualified immunity in a broad, generalized manner, failing to discuss this assertion in relation to each claim asserted by Plaintiff.[19] *Motion* [#50] at 11-13.

The doctrine of qualified immunity "shields government officials performing discretionary functions from liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to satisfy a strict two-part test demonstrating that the defense is not applicable. *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009). First, viewing the evidence in the light most favorable to the plaintiff, the plaintiff must demonstrate that a defendant's actions violated a constitutional or statutory right. *Id*. Second, "the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity." *Id.*

Regarding the first part of the test, the Sheriff Defendants merely state: "As illustrated above, Plaintiff has not established an underlying constitutional violation

---

[19] Thus, the Sheriff Defendants also appear to assert their qualified immunity argument in connection with (1) Plaintiff's Claim 1 against Defendants Reigenborn, Claps, and Gruenberger based on purported First Amendment free exercise and RLUIPA violations regarding kosher meals and religious practices, as well as a purported First Amendment violation regarding the opening of Plaintiff's legal mail and his access to the courts; and (2) Plaintiff's Claim 5 against Defendants Reigenborn and Claps based on supervisory liability for failure to protect Plaintiff's First Amendment and RLUIPA rights, as well as their failure to protect Plaintiff under the Fourteenth Amendment from the excessive force allegedly used on him by Defendants Europe and Krause. *See Motion* [#50] at 12 (implicitly referencing *id.* at 4-11). However, given Defendants' sparse argument here, the Court recommends dismissal of these claims on other grounds in this Recommendation.

either through lack of personal participation or lack of facts to rise to the level of a constitutional violation." *Motion* [#50] at 12. However, they asserted neither of these arguments in connection with the excessive force claim against Defendant Europe. *See id.* at 9-10; *see United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (stating that cursory argument not meaningfully developed by any analysis or citation is deemed waived); *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived.") (alteration omitted) (internal quotation marks omitted). Regardless, given Plaintiff's allegations that Defendant Europe's actions were unprovoked and occurred while Plaintiff was in a vulnerable position, the Court finds that the assertion of qualified immunity as to Defendant Europe fails at this stage of the proceedings. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 423 (1980) (holding that the Constitution is violated by "excessive or unprovoked violence and brutality inflicted by prison guards upon inmates").

Accordingly, the Court **recommends** that the Sheriff Defendants' Motion [#50] be **denied in part** to the extent they seek dismissal of Claim Two against Defendant Europe.

### 5.    Claim One: Right to Correspondence and Access to the Courts

Akin to his claim against Defendant Booth, Plaintiff asserts that Defendants Gruenberger and Claps also intentionally, willfully, and maliciously deprived him of his right to correspond outside the prison and that this impacted his access to the courts, alleging that the Court's January 23, 2023 Order was intercepted and/or reviewed by Defendants Gruenberger and Claps. *Am. Compl.* [#12] ¶¶ 20, 30.

The Sheriff Defendants argue that Plaintiff has failed to allege any prejudice arising from one piece of delayed mail. *Motion* [#50] at 6-7. For substantially the same reasons discussed concerning Defendant Booth in Section III.A.2. above, the Court agrees with the Sheriff Defendants. This claim should be dismissed because Plaintiff alleges no prejudice or actual harm, so he has failed to plausibly allege a First Amendment claim of interference with mail and a First Amendment claim of violation of his right to access the courts.

### a.     Interference with Mail

As the Court noted previously, "bare allegations . . . of brief delays in mailing or receiving . . . correspondence . . . do not rise to the level of constitutional violations." *Gee*, 627 F.3d at 1190. A prisoner still must demonstrate actual injury from the interference with his mail, along with improper motive. *Id.* at 1191; *see Treff*, 74 F.3d at 194. Actionable claims do not arise from isolated incidents in the absence of an improper motive or interference with a plaintiff's rights to counsel or court access. *Berger*, 12 F. App'x at 771.

Here, Plaintiff alleges that Defendants Gruenberger and Claps were involved in delays in Plaintiff's receipt of two pieces of correspondence: the Court's January 17, 2023 Order and "a subsequent court order of January 23, 2023, document 10."[20] *Am. Compl.* [#12] ¶¶ 20, 30. He also alleges that a non-party, Deputy Andazola, opened a large white legal envelope in front of him, containing the January 17, 2023 Order. *Id.* ¶ 27. Plaintiff acknowledges that he "has received legal mail . . . roughly estimated at five legal correspondences per week" totaling "hundreds of legal mail" but asserts that

---

[20] As noted previously, the Court is unable to definitively identify to which lawsuit or order Plaintiff refers.

because of this high volume, "it is very evident that both of these legal mail correspondences were intentionally impeded." *Id.* ¶ 31. Given the high volume of legal paperwork and the non-sensitive or protected nature of these two public court orders, the alleged interception of just two legal papers appear to be isolated incidents.

Both pieces of mail at issue were public court filings and not protected attorney-client privileged materials. The first Order gave Plaintiff 30 days to file an amended complaint. *Order* [#8]. Plaintiff sought an extension, which the Court granted. *Motion for Extension of Time* [#9]; *Minute Order* [#11]). Plaintiff fails to clearly identify the second piece of legal mail, which he alleges was delayed "roughly a dozen days"—and he has not plausibly alleged any harm from the delay. *Am. Compl.* [#12] ¶ 30. This is analogous to *Treff*, in which the prisoner complained about three occasions court paperwork was delayed by several days but failed to show any resulting prejudice. *Treff*, 74 F.3d at 194. As in *Treff*, the claims against Defendants Gruenberger and Claps must be dismissed.

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part**, and that Plaintiff's Claim One, to the extent premised on the First Amendment and interference with Plaintiff's mail by Defendants Gruenberger and Claps, be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127; *Wilson*, 781 F. App'x at 793 (stating that dismissal with prejudice is appropriate where amendment would be futile).

### b.    Access to the Courts

As noted in Section III.A.2. above, to have standing to raise a claim of denial of access to the courts, a prisoner must demonstrate actual injury arising from the defendants' actions, such as being unable to meet a filing deadline or present a claim, which resulted in an adverse ruling or other impediment. *Lewis*, 518 U.S. at 350-51,

353; *see also Peterson*, 149 F.3d at 1145. "'[A]n isolated incident, without any evidence of improper motive or resulting interference with [the plaintiff's] right . . . to access to the courts, does not give rise to a constitutional violation.'" *Green*, 465 F. App'x at 807.

Here, Plaintiff has not alleged an actual injury arising from the delay in two of his court papers. Regarding the first paper, as is noted above, Plaintiff later sought an extension which the Court granted. *Motion for Extension of Time* [#9]; *Minute Order* [#11] (granting Plaintiff's Motion [#9]). Regarding the second delayed paper, he does not argue that he was prejudiced by its delay. He categorizes these as "legal envelopes" and "legal mail," but not that these were privileged or attorney-client materials; they were public court orders. *Am. Compl.* [#12] ¶¶ 27, 30. Indeed, Plaintiff sought and was granted an extension of time in which to act upon the Court's January 17, 2023 Order.

Moreover, Plaintiff has alleged no facts that would typically show a constitutional violation of the right to access the courts; for example, he does not allege that he was denied "paper, writing implements, stamps, and access to notary services" or "access to an adequate law library or legal advisor." *United States v. Santiago*, 199 F. Supp. 3d 1287, 1289 (D. Colo. 2016). He has not plausibly alleged any limitations or restrictions on his "ability . . . to prepare a petition or complaint" or any harm in pursuing his claims. *Wolff*, 418 U.S. at 576.  Thus, this claim should be dismissed.

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part**, and that Plaintiff's Claim One, to the extent premised on the First Amendment and access to the courts as to Defendants Gruenberger and Claps, be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127; *Wilson*, 781 F. App'x at 793 (stating that dismissal with prejudice is appropriate where amendment would be futile).

6.    **Claim One: First Amendment (Free Exercise)**

Plaintiff's claim for violation of his First Amendment rights is that Defendants Reigenborn and Claps did not provide him religious services for his Messianic beliefs, did not keep kosher meals separate, failed to wrap kosher food trays, and did not provide him a rabbi to read him the Bible aloud due to a cost saving policy. *Am. Compl.* [#12] ¶¶ 1-19. He alleges that his religious beliefs require him "to hear the 'Bible' red-out loud [*sic*] by a Rabbi and attend services with other believers of his faith and requires a religious diet, kosher food to be kept separate from non-believers." *Id.* ¶ 16.

The Sheriff Defendants point out that Plaintiff admits he is provided with kosher meals; that he admits there are separate trays for kosher and non-kosher foods; and that he fails to allege that kosher and non-kosher *foods* are not kept separate except that he alleges that there is a "lack of wrapping" the kosher trays. *Motion* [#50] at 5 (citing *Am. Compl.* [#12] ¶¶ 15-17). The Sheriff Defendants further argue they are not obligated to provide him with religious services or to have a rabbi read the Bible aloud where the costs would be greater than a de minimis amount. *Id.* at 4-5.[21]

Incarcerated individuals "retain fundamental constitutional rights," including "the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Williams v. Wilkinson*, 645 F. App'x 692, 703-04 (10th Cir. 2016) (quoting *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999)). The right to free exercise of religion includes inmates' "constitutional right to a diet

_____

[21] The Court notes that the Sheriff Defendants' cost argument fundamentally misstates the case on which they rely, *Ahmad v. Ehrmann*, 339 F. Supp. 2d 1134 (D. Colo. 2004), *rev'd sub nom. Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006). *Motion* [#50] at 5. The cost of accommodation being more than de minimis was not dispositive in *Ahmad*—rather, it was one of four factors the court considered. *Ahmad*, 339 F.Supp.2d at 1136.

conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

"[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must [allege] that a prison regulation substantially burdened sincerely-held religious beliefs." *See Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir. 2007) (internal quotation marks and ellipsis omitted). A "substantial burden" is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities. *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320 (D. Kan. 2007) (discussing Tenth Circuit "substantial burden" jurisprudence).

A prisoner's belief in dietary practices need not be "doctrinally 'required' by the prisoner's religion" so long as "the belief is 'genuine and sincere.'" *Kay*, 500 F.3d at 1220 (citing *LaFevers v. Saffle*, 936 F.2d 1117, 1119 (10th Cir. 1991)). Dismissal on the sincerity prong is appropriate only in the very rare case where a plaintiff's beliefs are "so bizarre, so clearly nonreligious in motivation that they are not entitled to First Amendment protection." *Id.* at 1219-20 (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1353 (10th Cir. 1997) *opinion vacated in part on other grounds on reh'g en banc*, 159 F.3d 1227 (10th Cir. 1998)).

Second, assuming that the regulation at issue substantially burdens the plaintiff's sincerely-held religious beliefs, the Court must consider whether legitimate penological interests justify the impinging conduct. *See Mostafa v. Garland*, No. 20-cv-00694-PAB-SKC, 2024 WL 37977, at *9 (D. Colo. Jan. 3, 2024) (citing *Turner  v. Safley*, 482 U.S.

78, 89 (1987)). The burden underlying this determination "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Courts generally balance four factors here:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (citations omitted). In the adjudication of a motion to dismiss, however, "a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Id.* (quoting *Gee*, 627 F.3d at 1187); *see also id.* at 1240 n.2 (stating that "an analysis of the *Turner* factors is unnecessary at the pleading stage"). Thus, the inmate must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. The inmate does *not* need to "identify every potential legitimate interest and plead against it," although he needs to "recite[ ] facts that might well be unnecessary in other contexts" to survive a Rule 12(b)(6) challenge. *Id.* at 1185, 1188.

### a.    Kosher Food

Plaintiff alleges a failure to wrap kosher meal trays and that non-disposable food trays used to serve non-kosher food are later used to serve kosher food. *Am. Compl.* [#12] ¶¶ 14-16. He alleges that his religious beliefs as a Messianic believer require his "kosher food to be kept separate from non-believers." *Id.* ¶ 16. He asserts that defendants' "policy not to . . . keep kosher food trays wrapped" forced him to "choose

between a basic life essential need of eating non-kosher food or abandon his belief and live in sin eating non-kosher food." *Id.* ¶¶ 18-19 (cleaned up). In short, the Court construes the Amended Complaint [#12] as alleging that Plaintiff's sincerely held religious beliefs require him to keep kosher.

Plaintiff is not required to plead how a kosher diet is necessary to practice his religion, but he *is* required to plead that this is a sincerely-held religious belief and that a prison regulation substantially burdens that belief. *See Mares v. LePage*, No. 16-CV-03082-RBJ-NYW, 2017 WL 3836042, at *5 (D. Colo. Aug. 31, 2017), *aff'd and adopted*, 2018 WL 1312814 (D. Colo. Mar. 13, 2018) (collecting cases) (citing *Kay*, 500 F.3d at 1218); *Nichols v. Fed. Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 3219998, at *9 (D. Colo. Aug. 12, 2010) ("Plaintiff has failed to allege sufficient facts to show that the diet he currently eats lacks sufficient food items that he may consume without violating his religion."). The Court finds that Plaintiff has adequately alleged the first requirement, i.e., that his religious beliefs are sincerely-held. *See, e.g.*, *Am. Compl.* [#12] ¶¶ 13 (discussing Plaintiff's religious precepts), 15 (discussing beliefs of Messianic Jewish believers). Further, given his allegations that re-use of non-kosher trays for kosher meals and the failure to wrap kosher meals were both ongoing issues, the Court finds, solely for purposes of the present Recommendation, that he has adequately alleged the second requirement, i.e., that the prison regulation(s) at issue substantially burdened his beliefs. *See, e.g.*, *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (holding that isolated violations of kosher restrictions were insufficient to support a First Amendment free exercise claim); *Strope v. Cummins*, 381 F. App'x 878, 882 (10th Cir. 2010) (holding that "occasionally unsatisfactory items in a meal" did not

"constitute[ ] a substantial burden on [the inmate's] practice of maintaining a kosher diet").

However, even assuming that Plaintiff has adequately alleged the substantial burden element of his claim, he has provided no allegations supporting "a plausible inference . . . that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. Plaintiff states that Defendants did not "keep kosher food trays wrap[p]ed" as "a cost saving policy," but he fails to explain why this does not constitute a legitimate penological interest. *Am. Compl.* [#12] ¶ 18. Otherwise, he has provided no allegations concerning whether the relevant prison regulations are reasonably related to legitimate penological interests with respect to his kosher meals. *See Gee*, 627 F.3d at 1185 (stating that the plaintiff has to "recite[ ] facts that might well be unnecessary in other contexts" in connection with this portion of a free exercise claim). Thus, on the factual allegations provided in Plaintiff's Amended Complaint [#12], the Court finds that Plaintiff has not sufficiently alleged this element of his claim.

Accordingly, the Court **recommends** that the Sheriff Defendants' Motion [#50] be **granted in part** and that Plaintiff's First Amendment free exercise claim be **dismissed without prejudice** insofar as Plaintiff alleges that Defendants have failed to appropriately accommodate his kosher dietary restrictions. *Reynoldson*, 907 F.2d at 127 (stating that pro se litigants should be given the opportunity to amend their claims "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements").

### b.     Religious Services and Provision of a Rabbi

Regarding Plaintiff's allegation that Defendants failed to provide him with religious services or a rabbi to read the Bible to him, Plaintiff fails to allege that these practices constituted a substantial burden on his ability to worship and how they substantially burdened his religious exercise. *Am. Compl.* [#12] ¶¶ 13-18. He vaguely alleges that he was "not being allowed to attend any perspective [*sic*] services" and that he was being forced to "choose between following the precepts of his religion and forfeiting governmental benefits" but does not explain what those services or benefits were. *Am. Compl.* [#12] ¶ 13. He alleges that his religious beliefs require him to "attend services with other believers of his faith," but he does not allege that there were other believers of his faith at the same facility. *Id.* ¶ 16. He has also not alleged why praying in his cell, by way of example, was not an acceptable alternative to attending worship services. In short, Plaintiff has not provided non-conclusory allegations regarding why Defendants' alleged actions substantially burdened his ability to worship. Because of this, the allegations as pleaded do not state a cognizable First Amendment violation. *See, e.g., Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972) (stating that prisons are not required to provide facilities or religious personnel "for every faith regardless of size" so long as prisoners are given reasonable opportunities to exercise religious freedom). In short, Plaintiff has not alleged how these prison policies substantially burdened his religious beliefs. *See Boles*, 486 F.3d at 1182 (stating that the prisoner showing that prison officials have "substantially burdened his sincerely-held religious beliefs" is "step one").

Specifically, regarding Plaintiff's allegation that Defendants provide Christian services (but not Messianic Jewish services) through a religious volunteer, the United States Supreme Court has expressly held that a prison is not required to provide facilities or personnel for every faith because the number of adherents may vary:

> We do not suggest, of course, that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty.

*Cruz*, 405 U.S. at 322 n.2.

In support of his claim, Plaintiff cites *Robertson v. Biby*, 647 F. App'x 893 (10th Cir. 2016).[22] *Am. Compl.* [#12] ¶ 16. There, the plaintiff-prisoner was a Messianic Jew who alleged that his faith required him to hear the Bible read aloud, and he requested (and was denied) an accommodation to obtain an audio Bible. *Robertson*, 647 F. App'x at 895. The district court had held that this restriction did not substantially burden the prisoner's exercise of religion because other alternatives were available that would allow him to hear the Bible read aloud, but the Tenth Circuit reversed. *Id.* at 898. The Court noted that the proposed alternatives (such as phone calls with family or friends to read the Bible aloud, or television or radio to listen to religious broadcasts) were unavailable to the plaintiff because he had a negative deposit account balance. *Id.* at 895. In reversing, the Tenth Circuit suggested that allowing plaintiff to obtain an audio

---

[22] Although *Robertson v. Biby* addressed claims under RLUIPA, its analysis of "substantial burden on . . . religious exercise" is relevant to Plaintiff's First Amendment free exercise claim. *See, e.g.*, *Lovelace v. Lee*, 472 F.3d 174, 198 n.8 (4th Cir. 2006) ("In its most basic protections, RLUIPA mimics the First Amendment. RLUIPA incorporates the 'substantial burden' test used in First Amendment inquiries and expressly refers to the Free Exercise clause in allocating its burden of proof.").

Bible would be a reasonable accommodation allowing him "to exercise his sincerely held religious need to hear the Bible read aloud." *Id.* at 897. Notably, even the *Robertson* plaintiff had "correctly observe[d] that he cannot require a Rabbi or others to visit him for the purpose of reading him the Bible." *Id.* at 896.

Here, Plaintiff has not plausibly alleged that his sincerely-held religious needs were substantially burdened by the Sheriff Defendants' failure to provide Messianic Jewish religious services or their failure to procure a rabbi to read the Bible aloud to Plaintiff. Plaintiff has not explained why an audio Bible (the alternative sought in *Robertson* by another adherent of the same faith) would not have sufficed. *Robertson*, 647 F. App'x at 895.

Further, even assuming that Plaintiff had adequately alleged the substantial burden element of his claim, he has provided no allegations supporting "a plausible inference . . . that the action was not reasonably related to a legitimate penological interest." *Gee*, 627 F.3d at 1188. Plaintiff states that Defendants did not hire a rabbi as "a cost saving policy," but he fails to explain why this does not constitute a legitimate penological interest. *Am. Compl.* [#12] ¶ 18. Otherwise, he has provided no allegations concerning whether the relevant prison regulations are reasonably related to legitimate penological interests with respect to either the provision of a certain type of religious service or the provision of a rabbi to read the Bible to him. *See Gee*, 627 F.3d at 1185 (stating that the plaintiff has to "recite[ ] facts that might well be unnecessary in other contexts" in connection with this portion of a free exercise claim).

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part** and that Plaintiff's First Amendment free exercise claim be **dismissed without**

**prejudice** insofar as Plaintiff alleges that Defendants failed to offer services or procure a rabbi to read the Bible aloud. *Reynoldson*, 907 F.2d at 127 (stating that pro se litigants should be given the opportunity to amend their claims "where deficiencies in a complaint are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special pleading requirements").

### 7.    Claim Five: Supervisory Liability

Plaintiff raises claims of supervisory liability against Defendants Reigenborn and Claps. *Am. Compl.* [#12] ¶ 3 (alleging that Defendant Reigenborn was responsible "for the hiring, training, and supervising of the ACSO and ACDF employees" between February 24, 2021 and October 2022), ¶ 5 (alleging that Defendant Claps replaced the acting Adams County Sheriff in October 2022 and incorporating the allegations against Defendant Reigenborn). He alleges that the defendant-supervisors deprived him of his right to freely exercise his religion by failing to implement Messianic services and by failing to implement a policy of wrapping kosher trays to keep them separate from non-kosher trays. *Id.* ¶¶ 13-15. He alleges that Defendant Claps interfered with his legal mail, although the details of this mail interference are limited to conduct which Defendant Booth and Deputy Andazola allegedly engaged in. *Id.* ¶¶ 23-27. He asserts that Defendants Reigenborn and Claps failed to train or supervise Adams County sergeants and deputies by "failing to properly require regular stress enoculation [sic] training," which resulted in incidents on December 6, 2021, and April 11, 2022. *Id.* ¶¶ 79-85.

To succeed on a claim of supervisory liability, "it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed

the violation. Instead, . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1999)) (internal quotation marks omitted). The Tenth Circuit Court of Appeals has further clarified that a plaintiff alleging supervisory liability must plead that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). In other words, an "affirmative link" must exist between the subordinates' alleged unconstitutional acts and the express or implied adoption of a plan or policy. *Id.* at 1200-01.

    As an initial matter, because the Court has found that Plaintiff has failed to state claims of First Amendment violations (whether regarding interference with mail, access to the courts, or free exercise of religion), there can be no supervisory liability for those asserted constitutional violations. *See id.* at 1199 (stating that the supervisor's policy must have "caused the complained of constitutional harm," which cannot occur if no constitutional harm was caused). The same holds true for Plaintiff's RLUIPA claim. *See, e.g.*, *Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1200 (N.D. Okla. 2010) (noting that the same logic applying to § 1983 and supervisory liability applies to RLUIPA claims and supervisory liability).

    Accordingly, the Court **recommends** that the Motion [#50] be **granted in part**, and that Plaintiff's Claim Five be **dismissed without prejudice** to the extent premised on purported violations of the First Amendment free exercise of religion and RLUIPA,

*see supra* §§ III.B.1. & III.B.6., and **dismissed with prejudice** to the extent premised on access to the courts and interference with mail, *see supra* § III.B.5. *See Reynoldson*, 907 F.2d at 127. Because the Court finds amendment of Plaintiff's access to courts and interference with mail claims would be futile, so too would amendment of the supervisory liability claims premised on those alleged constitutional violations. *See Wilson*, 781 F. App'x at 793 (dismissal with prejudice of pro se litigant's complaint is appropriate where amendment would be futile).

### a.    Defendant Claps

The Court next addresses Plaintiff's supervisory liability claim as it pertains to the underlying use of excessive force claims. Both instances of purported excessive force occurred in 2021. *Am. Compl.* [#12] ¶ 80. However, Plaintiff affirmatively alleges that Defendant Claps did not assume his position as Sheriff until October 2022. *Id.* ¶ 5. In short, Defendant Claps could not have personally participated in the alleged failures to supervise in connection with the excessive force claims because they occurred before he took the position.

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part**, and that Plaintiff's Claim Five, to the extent asserted against Defendant Claps and premised on excessive force, be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127; *Wilson*, 781 F. App'x at 793.

### b.    Defendant Reigenborn

"[L]iability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence." *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Deliberate indifference requires that the official "both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir. 2003).

The claims against Defendant Reigenborn fail for lack of personal participation and mental state. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."). The Complaint fails to specifically identify actions taken by Defendant Reigenborn and fails to allege that Defendant Reigenborn acted with deliberate indifference. *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (finding no supervisory liability where the sheriff was not present during the incident, did not approve or otherwise assent to the use of force, and the allegations of the sheriff's knowledge were "based on innuendo and speculation rather than fact."). *Est. of Holmes by & through Couser v. Somers*, 387 F. Supp. 3d 1233, 1252-53 (D. Kan. 2019) (finding no supervisory liability because of insufficient allegations concerning the supervisor's personal involvement). Plaintiff's Amended Complaint [#12] contains a conclusory allegation that Defendant Reigenborn "personally participated in this deficient hiring, training, supervision, discipline, and failing to require regular stress enoculation [sic] training of his ACSD subordinates," and he alleges no facts to support or demonstrate Defendant Reigenborn's personal participation in the incidents. *Am. Compl.* [#12] ¶ 84; *see also id*. at ¶¶ 33-47 (alleging only that Defendant Europe was present for December 6, 2021 incident), 48-67 (alleging only that Defendant Krause was present for April 11, 2022 incident); *Shero*, 510 F.3d at 1200 (stating that the Court need not accept as true conclusory allegations). Plaintiff has failed to plausibly allege that Reigenborn was

44

responsible for a policy, which caused the violation of Plaintiff's rights, and that
Reigenborn acted with the requisite state of mind. *Estate of Holmes*, 387 F. Supp. 3d at
1253-54 (citing *Dobbs*, 614 F.3d at 1199). Thus, Plaintiff has failed to show an
affirmative link between the alleged violation and Reigenborn's alleged failure to
supervise. *Id.* at 1254.

Accordingly, the Court **recommends** that the Motion [#50] be **granted in part**,
and that Plaintiff's Claim Five, to the extent asserted against Defendant Reigenborn and
premised on excessive force, be **dismissed without prejudice**. *See Reynoldson*, 907
F.2d at 127.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that Defendants Booth and Adams County's
Motion [#42] be **GRANTED in part and DENIED in part**, as outlined above, that the
Sheriff Defendants' Motion [#50] be **GRANTED in part and DENIED in part**, as
outlined above, and that Defendant Krause's Motion [#70] be **DENIED**.[23]

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of
service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that,
"within 14 days after being served with a copy of the recommended disposition, a party
may serve and file specific written objections to the proposed findings and
recommendations. A party may respond to another party's objections within 14 days
after being served with a copy." "[A] party's objections to the magistrate judge's report

---

[23] Should this Recommendation be adopted in full, the following claims will remain: Claim Two
against Defendant Europe; Claim Three against Defendant Krause; Claim Four against Adams
County, to the extent Plaintiff asserts municipal liability based on failure to train regarding
excessive force. Further, if this Recommendation is adopted in full, all claims asserted against
Defendants Booth, Reigenborn, Gruenberger, and Claps will be dismissed.

and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: February 29, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge