IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 22-cv-02896-GPG-KAS

ALEXANDER NOEL GARCIA,

    Plaintiff,

v.

ADAMS COUNTY, COLORADO,
ADAMS COUNTY SHERIFF RICHARD REIGENBORN,
ADAMS COUNTY DEPUTY WILFRED EUROPE,
ADAMS COUNTY DEPUTY CHAD KRAUSE,
ADAMS COUNTY SHERIFF GENE CLAPS,
KERI BOOTH, and
ADAMS COUNTY DEPUTY C.M. GRUENBERGER,

    Defendants.

## ORDER

### I. PRO SE SUMMARY

Because Mr. Garcia proceeds without an attorney, it is in the interest of justice to provide a brief summary of this Order. Mr. Garcia sued a number of people and organizations, stating that he was treated with too much force while in jail. Several motions to dismiss were filed requesting that the claims against those people and organizations be thrown out because they were not valid or sufficiently explained. I referred those motions to Magistrate Judge Starnella, who wrote a recommendation letting me know that it was legally appropriate to dismiss many of the claims but that some should remain.

1

Adams County objected to that recommendation. After reviewing the objection, I disagree with Adams County and agree with Magistrate Judge Starnella. The following claims remain in this case: claim two against Defendant Europe; claim three against Defendant Krause; claim four against Adams County, to the extent Plaintiff asserts municipal liability based on failure to train regarding excessive force; and claim five against the Sheriff in his official capacity only, to the extent Plaintiff asserts municipal liability based on failure to train regarding excessive force. All other claims and Defendants are dismissed.

The reason the claims remain is because Mr. Garcia sufficiently explains how: (1) excessive force was used against him by Defendants Europe and Krause and (2) Adams County and/or its Sheriff had a custom or practice of not providing training that would teach the deputies to de-escalate conflicts with jail inmates in a way that would prevent them from using too much force in the jail.

## II. INTRODUCTION

Before the Court is the Report and Recommendation by United States Magistrate Judge Kathryn A. Starnella issued on February 29, 2024. Magistrate Judge Starnella recommended granting in part and denying in part the Motion to Dismiss of Defendants Booth and Adams County (D. 42), granting in part and denying in part the Sheriff Defendants' Motion to Dismiss (D. 50), and denying Defendant Krause's Motion to Dismiss (D. 70). For the following reasons, the Court AFFIRMS and ADOPTS the Recommendation.

The parties were advised that they had fourteen days, after being served with a copy of the Recommendation, to file written objections seeking reconsideration by the District Judge assigned to the case. *See* Fed. R. Civ. P. 72(b). Only Adams County objected (D. 80) to any portion of the

Recommendation—it objected to the part of the Recommendation recommending that Adams County's motion to dismiss be denied in part. No other portions of the Recommendation were objected to in any fashion.

### A. Portions of the Recommendation Meeting no Objection

Under 28 U.S.C. § 636(b)(1)(B), this Court may designate a magistrate judge to consider dispositive motions and submit recommendations to the Court. When a magistrate judge submits a recommendation, the Court must "determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A party's failure to file such written objections may bar the party from a de novo determination by the district judge of the proposed findings and recommendations. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). When this occurs, the Court is "accorded considerable discretion" and "may review a magistrate's [judge's] report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas*, 474 U.S. at 150).

After reviewing all the relevant pleadings, the Court concludes that Magistrate Judge Starnella's analysis was thorough and comprehensive, the Recommendation is well-reasoned, and that there is no clear error on the face of the record. Accordingly, the Court AFFIRMS and ADOPTS all portions of Magistrate Judge Starnella's Recommendation (D. 79) as to which there were no objections as an order of this Court.

### B. The Objection

Magistrate Judge Starnella recommended that claim four against Adams County, "to the extent Plaintiff asserts municipal liability based on failure to train regarding excessive force" not be dismissed (D. 79 at 45 n.23). Adams County objects to this recommendation on two grounds:

3

First, that Plaintiff failed to adequately plead his claim by failing to allege some action of Adams County that "led to [Plaintiff's] alleged mistreatment by the Sheriff" (D. 80 at 3). And second, that under Colorado law, the Sheriff is a separate entity from the County—so in essence, the County is not a proper party (*id*. at 7–11). Adams County also argues that it would be logically inconsistent to dismiss all claims against the Sheriff while simultaneously allowing claim four to proceed against Adams County (*id*. at 4–5).

### III. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is proper if it is both timely and specific. *United States v. 2121 East 30th St.*, 73 F.3d 1057, 1059–60 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id*. at 1059. In conducting its review, "[t]he district judge may accept, reject, or modify the [recommendation]; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### IV. FACTUAL SUMMARY

As it is relevant to the objection to the Report and Recommendation, Plaintiff asserts two claims of excessive use of force, both of which are wrapped into his municipal liability claims. Specifically, Plaintiff's second claim for relief is for unreasonable and unconstitutional use of force in violation of the Fourteenth Amendment (D. 12 at 10–16). In connection with this claim, Plaintiff alleges that he was assaulted by Defendant Europe on December 6, 2021, when Defendant Europe

4

struck him twice in the chest in the Adams County Detention Facility. Plaintiff's third claim for relief is also for unreasonable use of force in violation of the Fourteenth Amendment (*id*. at 16-19). In connection with this claim, Plaintiff alleges that Deputy Krause grabbed and struck him.

Plaintiff then incorporates the two use of force claims into his municipal liability claim against Adams County (*id*. at 19–21). Specifically, Plaintiff alleges that Adams County:

1. "had a non-delegable duty to ensure that its detainees were free from excessive force" (*id*. at 19);

2. adopted deliberately indifferent and unconstitutional policies regarding use of force that were the "moving and proximate cause of [Plaintiff's] injuries" (*id*.);

3. failed to require annual stress inoculation training to relieve the pressure of being a deputy (*id*);

4. failed to properly train and supervise employees regarding use of force against detainees (*id*.); and

5. employed "policies, customs, and practices. . . [that] were the moving forces in and proximate cause of the deprivation of" rights (*id*).

In the following claim (the fifth claim for relief) Plaintiff also states that:

Adams County . . . failed to properly require regular stress enoculation [sic] training and failed to properly hire, train, supervise, and or discipline any of its subordinate employees and agents . . . despite the obvious need for scrutiny in hiring and specialized training, supervision and discipline regarding such decisions, and the fact that its current custom, policies, or practices with respect to hiring, training, supervision, and or discipline are clearly likely to result in a violation of constitutional rights.

(*id.* at 21-22).

Plaintiff also asserts that he reached a settlement relating to two prior assaults perpetrated against him by Adams County Sheriff's deputies (*id*. at 22). I have reviewed pertinent parts of

5

that action, No. 16-cv-01977-PAB-NYW (D. Colo.),[1] and take judicial notice of the following: claims against Adams County under a theory of failure to train were dismissed at the motion to dismiss stage (No. 16-cv-01977, D. 53 at 6-9). However, in that matter, Plaintiff raised the issue of needed stress inoculation training (just as he has in the instant case) (*id*. at 9). Though no formal settlement agreement appears in the record, it appears that certain of Plaintiff's claims were ultimately dismissed pursuant to an agreement (*see* No. 16-cv-01977, D. 54). Both the County and the Sheriff (in his official capacity) were defendants in the prior case.[2]

### V. ANALYSIS

#### A. The Missing Link

Plaintiff asserts claims against both Adams County (claim four) and the Sheriff (in his official capacity) (claim five) under essentially the same theory (though there are some factual differences). It appears that Magistrate Judge Starnella analyzed and recommended dismissal of

---

[1] While, generally speaking, a district court may only consider the complaint (and not extrinsic documents) in ruling on a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), there are some exceptions, including when the extrinsic matter the court refers to is a proper subject of judicial notice. Court dockets and documents, as well as other matters of public record, fall into this category. *See, e.g.*, *Vaninetti v. W. Pocahontas Properties Ltd. P'ship*, No. 11-CV-02308-LTB-MEH, 2012 WL 4359302, at *2 (D. Colo. Sept. 24, 2012); *see also Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020) ("A district court . . . may take judicial notice of its own files and records, as well as facts which are a matter of public record, without converting a motion to dismiss into a motion for summary judgment." (quotation omitted)).

[2] "An official capacity suit is, in all respects other than name, to be treated as a suit against an entity." *Harrell v. Ross*, No. 23-8007, 2024 WL 389407, at *4 (10th Cir. Feb. 2, 2024) (quoting *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1048 (10th Cir. 2022)). Accordingly, changes to the identity of the officeholder have no practical effects (at least from a litigation perspective). This principle is reflected in Federal Rule of Civil Procedure 25(d), under which:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

claim five against Sheriff Reigenborn in his *individual* capacity but never addressed the motion to dismiss Sheriff Reigenborn in his *official* capacity (*see* D. 79 at 43–45). But the analysis regarding the official-capacity claim against Sheriff Reigenborn, essentially a suit against a government entity and not a person, is functionally the same as the analysis of the claim against Adams County: both turn on the same principles of municipal liability.

### B. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge[ the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes

7

a savvy judge that actual proof of those facts is im^(pr)obable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### C. Municipal Liability

Municipal institutions are "persons" subject to suit under Section 1983. *Crittenden v. City of Tahlequah*, 786 F. App'x 795, 800 (10th Cir. 2019). However, a municipality cannot be sued under Section 1983 "for an injury solely inflicted by its employees or agents." *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 694 (1978). Instead, municipal liability requires that a municipal policy or custom was the moving force behind the alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). Thus, to plead a claim against a municipality under Section 1983, a plaintiff must allege that: "(1) an official policy or custom (2) caused the plaintiff's constitutional injury and (3) that the municipality enacted or maintained that policy with deliberate indifference to the risk of that injury occurring." *George v. Beaver Cnty.*, 32 F.4th 1246, 1253 (10th Cir. 2022) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–71 (10th Cir. 2013)). "Municipal liability is 'most tenuous where a claim turns on a failure to train.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A municipality's failure to train its police officers rises to the level of a municipal "policy or custom" only when it evidences the municipality's "deliberate indifference" to the rights of its inhabitants. *Connick*, 563 U.S. at 60. Typically, "[a] pattern of similar constitutional violations by untrained employees is [] 'necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)). It is unnecessary to plead a pre-existing pattern of violations only in the "rare" cases

8

where "the unconstitutional consequences of failing to train" are "patently obvious." *Id.* at 64. The failure-to-train analysis focuses on "the adequacy of the training program in relation to the tasks the particular officer must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality] . . . ." *City of Canton*, 489 U.S. at 390.

In 2016, Plaintiff asserted claims against both Adams County and the Adams County Sheriff (then Sheriff Michael McIntosh) in his official capacity for failure to train. Those claims were dismissed (*see* No. 16-cv-01977-PAB-NYW). Plaintiff alleges that he was previously assaulted (the genesis of the 2016 case), that he filed suit regarding those assaults, and that the Sheriff and Adams County were on notice of their inadequate inoculation training—i.e., training that helps deputies address stressful situations with inmates and resolve those situations by de-escalation rather than using physical force. Plaintiff further states that despite their awareness of these deficiencies, these defendants did nothing to remedy them. Plaintiff also alleges that the need for this training was obvious and the training deficiencies were likely to result in a violation of constitutional rights. Finally, Plaintiff asserts that he was assaulted while in the Adams County jail by deputies in violation of his constitutional rights because of Adams County and its Sheriff's purported failure to train.

Adams County makes a cursory attempt to argue that Plaintiff's allegations do not suffice for Rule 8 purposes (D. 42 at 5) but never develops that argument. And as I ultimately find that the 12(b) standard is met, there is no need to address any argument Adams County may have been trying to assert under Rule 8. For purposes of a motion to dismiss pursuant to Rule 12(b)(6), Plaintiff has stated a cognizable claim both against the Sheriff in his official capacity and Adams

9

County. Plaintiff alleged that the Sheriff and Adams County were deliberately indifferent in not training the deputies to address such circumstance as he faced, the alleged failure to train squarely relates to duties a deputy must perform, and Plaintiff pleaded a pattern of pre-existing constitutional violations purportedly caused by the same training deficiencies as he alleges here. The Court has individually reviewed this issue as to both Sheriff Reigenborn and Adams County and finds that Plaintiff pleads a cognizable claim as to each. To the extent that the matter was unaddressed by Magistrate Judge Starnella, claim five against Sheriff Reigenborn in his official capacity, to the extent Plaintiff asserts municipal liability based on a failure to train regarding excessive force, is not dismissed.

### D. The Proper Municipal Defendant

Defendant Adams County moved for dismissal on the basis that Adams County is a separate and distinct governmental entity as the Sheriff is "an independently elected constitutional officer separate from Adams County" (D. 42 at 7). While the Sheriff and County may have the same jurisdictional boundaries, their duties and obligations are distinct (*id.*). As relevant to the claims in this action, "[t]he Sheriff has exclusive statutory authority to hire, train, and fire deputies" and "has exclusive statutory powers as the keeper of the jail" (*id.*). After due consideration, the Court finds that both Sheriff Reigenborn and Adams County are proper municipal defendants and that the municipal-liability claims against neither of these defendants are appropriate for dismissal at this juncture.

In federal court, a municipal entity's "capacity to sue or be sued it determined . . . by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). Adams County disputes the proper application of *Bristol v. Board of County Commissioners of County of Clear Creek*, 312 F.

10

3d 1213 (10th Cir. 2002) and contends that the Tenth Circuit merely suggested (rather than held) that a Colorado board of county commissioners could be sued for the policy decisions of an elected sheriff when those decisions constituted official policy of the county.  While I read the Tenth Circuit's statements on this issue as dicta (and I note that *Bristol*, unlike this case, dealt with issues of employment law), I nevertheless find them logically persuasive.

Further, several judges within this District have addressed proper-party issues similar to those presented here.  For instance, District Judge William J. Martinez recently denied a motion to dismiss propounded by Adams County, determining that Adams County would be able to take advantage of a significant loophole if only the sheriff was subject to suit under § 1983.  *See Hardy v. Adams County*, No. 22-cv-02843-WJM-MDB [ECF 92] (March 18, 2024).[3]

And as District Judge Charlotte N. Sweeney recently discussed in *Estate of Richard Ward v. Pueblo County*, No. 23-cv-473-CNS-MDB [ECF 97] (January 1, 2024), this issue is commonly a matter best left for summary judgement.  That logic holds true in the context of this action.  Plaintiff alleges a failure-to-train claim as to deputies working in the county jail.  The alleged training deficiencies spanned the tenures of at least two different elected sheriffs.  One viable theory could be that multiple sheriffs have used basically identical and deficient training policies—declining to train deputies on conflict resolution and instead countenancing excessive uses of force in violation of constitutional rights.  Another viable theory is that, from sheriff to sheriff, the County promulgated a policy or custom of deficient training or adopted such a policy as promulgated by the sheriffs.  At this juncture (and before Plaintiff has received the benefit of

---

[3] The Court appreciates counsel's candor in providing the case (D. 81).

discovery) I find that Plaintiff has sufficiently pleaded these alternate theories and that neither the Sheriff, in his official capacity, nor Adams County should be dismissed from this action.

## VI.  CONCLUSION

It is therefore Ordered that the Report and Recommendation (D. 79) is adopted in full as an order of this Court and the objections thereto are DENIED.

It is further clarified and Ordered that claim five against Sheriff Reigenborn in his official capacity, to the extent Plaintiff asserts municipal liability based on a failure to train regarding excessive force, is not dismissed.

DATED March 29, 2024.

BY THE COURT:

Gordon P. Gallagher
United States District Judge